522-0536 WC East St. Louis Police Department Appellant by James Keefe v. The Illinois Workers' Compensation Comm'n The Angelo Franklin Appellee by Aaron Chappell. Mr. Keefe, you may proceed. Thank you, Your Honor, and may it please the Court. My name is Jim Keefe and I represent the appellant, the City of East St. Louis, Mr. Chappell. Your Honor, I want to start with the Commission's decision to not address the cervical, spine, and left hip conditions. As you'll see in the Commission decision in the causation section, disputed issue F, and then the medical bill section, they specifically say, is petitioner's current condition of ill-being, specifically the left knee, lower back, and right hip injuries experienced after August 6, 2018, causally related to the accident? And then the arbitrator and the Commission go on to render conclusions on those conditions. There's no doubt that the cervical, spine, and the left hip conditions were also in dispute. There's testimony from Dr. Gornett, Dr. Robson, Dr. Pitts, Dr. Bradley, Dr. King, on those conditions of ill-being, and the arbitrator and the Commission, reasons I'm not really sure, just did not address whether or not they're work-related. And I understand the employee's point that, well, they awarded all the medical bills, so that means they must have intended to find the neck and left hip conditions work-related. But if you look at the medical bill section or conclusion part, it specifically states, in light of the findings above and review of the medical records, the medical cost for evaluation, diagnosis, and treatment of the petitioner's left knee and lower back were reasonable and necessary. So again, in the conclusion, they specifically spell out the left knee, lower back, and then explain the reasons why the right hip is denied. So I don't think, in this case, the Commission completed its job and reached those conclusions with respect to causation for the cervical, spine, and the left hip, and then what medical bills, if any, would be awarded for those conditions of ill-being. And that is the job of the Commission and the arbitrator. So specifically for that issue, I think it needs to be remanded so we can have conclusions on those issues. Moving forward, the left knee condition, while I understand our hurdle on manifest weight of the evidence, certainly, here, the basis that the Commission articulated for finding the left knee condition work-related, there's really no basis in the record for it. And the reason, or reasons I say that, are, number one, the Commission states that the objective medical evidence shows the left knee is work-related. Well, Dr. Paletta admitted that he didn't look at the MRI of the patient's left knee before our August 2018 work accident. He looked at it afterwards. So he didn't have an objective way to say, hey, the MRI scan from before the accident and after the accident are different. It's worse. Dr. Pitts, on the other hand, the only evidence in the record from an imaging standpoint is that we have identical ACL tears both before and after the accident. The next objective thing that doctors look at is the physical examinations. And between 2013 and 2016, Dr. Mall found instability because of that ACL tear. And Dr. Paletta, after the accident, had the exact same findings. In fact, he didn't actually even find instability in his first visit after the accident, but the second visit he did. So again, objective medical findings on exams are identical before and after the accident. So there's really no objective change in the left knee condition. And probably most importantly, Dr. Mall had recommended the ACL surgery from 2013 through 2016. And Dr. Paletta ultimately performed that surgery after the 2018 accident, the identical surgery Dr. Mall was going to perform. So what is it or what is the basis for finding a cause or an aggravation? Well, arbitrator seems to hint at the fact, or the commission, I'm sorry, that affirmed the arbitrator that, well, he was working full duty for two years and he wasn't having any knee complaints and he was asymptomatic. Well, the arbitrator and the commission had already said anything that the petitioner had testified to was pretty well tainted, as were the doctor's testimony, because of the number of times he was dishonest, not only at arbitration, but also to the doctor. Just as an example with the knee, he saw Dr. Paletta two, three, four times before Dr. Paletta performed surgery and never even told him that Dr. Mall, who was Dr. Paletta's partner, by the way, he had an ACL tear and that surgery was recommended. Dr. Paletta had no idea. And that gets to the point about Dr. Paletta's opinion. On direct examination, he said the two basis of finding the ACL condition and surgery work related were number one, the guy denied any prior ACL or knee issues, and number two, the mechanism of injury. Well, on cross-examination, Dr. Paletta came to learn that Mr. Franklin did have significant pre-existing issues, including the ACL tear and three years for recommended surgery. And then number two, the mechanism of injury he ultimately conceded was not typical for an ACL and the only credible evidence in the record supports that this ACL condition and surgery by Dr. Paletta is not related to this accident of August 6th of 2018. Counsel, let me ask you, is there no basis on which the commission can make that finding? I don't think there is. And I discuss a little bit that in my brief. If the basis, the only one that I could think of or articulate is, well, he said he was having no symptoms. He was pain-free and he was working full duty for two years. Well, I don't think that's actually what the evidence in the record indicates. Number one, while between the 2016 last time he saw Dr. Mall, and I don't even want to say it's a release because there's nothing in the record that reflects, he was actually released by a doctor in 2016, 2017. But I do concede that he was working at full duty, obviously on the date of the injury. And at times between the last time he saw Dr. Mall in 2016 to 2018. With that said, there is no formal release from Dr. Mall or opinion from any doctor that he didn't need the left knee ACL surgery. It didn't just go away just because he didn't have it doesn't mean that he didn't require it. Number one. Number two, Dr. Ahmed's records, his family physician from 2016 and 2017, know each time in the review of systems that he had ongoing chronic knee pain. And he couldn't deny that at arbitration when he was confronted with those records. So if the basis of the conclusion for the commission is he was fined for two years between Dr. Mall's last visit and the work accident, I don't think that that's what's in the record, your honor. And that's how I would distinguish that that that that reliance or, or that basis of affirming the commission decision. Moving on to the lumbar spine. The commission again, was relying on the opinion of Dr. Gornett over the examining physician, Dr. Robson, which again, I concede ordinarily, it's up to the commission to find out which doctor is more reliable and more credible. But there still has to be an adequate foundation to rely on that doctor's opinion. And here, Dr. Gornett testified both on direct and cross examination that the basis of his causation opinion, knowing that officer Franklin had pretty significant preexisting lumbar conditions, was that before August 6th of 2018, his low back problem improved, got substantially worse after August 6th of 2018, and then never has come back to baseline. Well, if in fact, is the commission found anything that is the way they put it, then you don't really have a foundation for a true pre accident pain and function level of officer Franklin. Again, just like the knee, if you take it at his word, that between 2016 and 2018, he was doing great, fine, no issues working full duty the whole time. Well, yes, that in and of itself, I think could be a basis to affirm the commission decision. But that's again, not what's in the record. Those same records that I mentioned from Dr. Ahmed that referenced the chronic knee pain, he was also mentioned chronic low back pain. The same thing where he did miss some time between 2016 and 2018. Admittedly, he was not taking off for the low back or the knee during that time. Those were different work comp injuries. But again, he wasn't working full duty for two years. That's just not the case. So if Dr. Gwinnett's opinion is based upon the reliability and the accuracy of what officer Franklin is saying about his symptoms, I just don't think that can serve as an adequate basis to maintain the arbitrator and the commission's conclusion that this was an aggravation or a permanent aggravation of a pre-existing condition. So we would ask that the court reverse the decision of the commission on manifest weight regarding the left knee and the lumbar spine conditions. The last point, your honors, were that tissue or employee did agree that respondent is entitled to an HA credit for the medical bills paid by the group health provider. We likewise stipulated that we would provide a hold harmless in accordance with section 8J. At the time of the hearing, we had not added up the amount of the group health payments, but I think they were just asked that it be remanded with an order to grant that HA credit and the hold harmless. And if there's no further questions, your honors, I don't have anything further. Thank you. I do have one. Why did the commission take out that language? I'm sorry, just take out what language? The hold harmless and the other language. Why did they take it out? Well, because on the request for hearing form in the bottom paragraph where it says respondent paid X number of dollars, it was left blank and it was just marked agreed to by the employee or the petitioner. We had not added up the amount of the money. And so I guess they wanted something put in that blank. So that would have been the basis of them determining that without something in that blank that they could not grant the HA credit. Okay, so it was to get the parties to move, basically. Would that language have been considered superfluous? I think so, because I think as even Mr. Chappell had put in his brief, at the end of the day, they're going to agree to a credit to what my client paid and we're going to agree to a hold harmless if these are all found as work-related conditions. Okay, thank you. Other questions? Okay, Mr. Keefe, you'll have time in reply. Thank you, Your Honor. Mr. Chappell, you may respond. Good afternoon, Justices. Mr. Keefe, may it please the court, my name is Aaron Chappell and I represent the FLE Lieutenant D'Angelo Franklin. I'll try to focus my arguments on the threshold issues of causation unless you have any specific questions about the other disputed issues. The Commission did not fail to address whether Mr. Franklin's cervical spine and left hip conditions were causally related to the August 6, 2018 work accident. While E. St. Louis argues that the Commission failed to fully address causal connection with respect to the cervical spine and the left hip conditions, the decision plainly states that the Commission, after considering the issues of causal connection, medical expenses, prospective care, temporary total disability, and the exclusion of evidence of prior claims and being advised of the facts of law, modifies the decision of the arbitrator, as stated below, and otherwise affirms and adopts the decision of the arbitrator, which was otherwise attached here to and made a part of the record. The matter was heard on a petition for medical benefits and off-work benefits pursuant to sections 19b and 8a. On page one of the arbitrator's decision, she notes that the petitioner was not seeking a claim regarding his cervical spine, so the issue was not to be addressed therein. So, at this time, at the time of the hearing, there was no prospective medical that was being sought for the neck. While Dr. Gornett had treated the neck or at least addressed it, he was putting any treatment on hold for the neck pending prospective medical treatment for the low back. So, causation for the cervical spine did not need to be addressed because prospective medical care was not being sought at the time of trial. Now, there was no treatment being sought at that time for the left hip as well, so prospective medical treatment was otherwise not addressed or awarded by the arbitrator. However, the arbitrator and the commission by adoption noted that the left hip treatment was awarded by the medical bills that were submitted as petitioner's exhibit and were otherwise introduced in the foundation laid by Dr. Bradley and Dr. King. Now, turning toward the commission's determination that Mr. Franklin's left knee and low back conditions were causally related to the work accident, the commission affirmed and adopted the arbitrator's findings on these issues, and in reaching these findings, the arbitrator stated that she had to rely on the objective aspects of Mr. Franklin's doctor's opinions. So, there is no dispute that he has had a history of left knee pain and low back pain predating his injury in 2018. There is no dispute that he was at least in some portion symptomatic between 2016 and 2018. Mr. Franklin said he was living a normal life and that normal life was working. That's not the same as being symptom-free. We have no dispute that Dr. Ahmed noted that Mr. Franklin was not actively treating for the left knee in 2017 or 2018 until this work accident. So, while he had those symptoms, he was not seeking treatment, no treatment was being offered, and he was working. Concerning the left knee and in support of the findings of causality, the arbitrator and by adoption the commission noted that Dr. Paletta had a long history of left knee pain and a broader basis of his opinions. Ultimately, Dr. Pitts agreed with that assessment and deferred to the treatment history and the opinions of Dr. Paletta over that course of time. Now, there's no evidence of knee problems or dysfunction between 2016 and 2018. While he told Dr. Ahmed that he had knee pain, there was no evidence of dysfunction. Dr. Pitts admitted that during that time. While Dr. Paletta and Dr. Pitts agreed that there was a complete ACL tear, that is otherwise not supported prior to 2018. Now, the respondent disputes that the East St. Louis disputes that Petitioner's left knee was ostensibly the same as it was prior to his work accident is not only unsupported by the evidence but by the court's prior judicial findings. In 2016, this matter was brought before the appellate court from claims arising out of injuries in 2013 and 14. Looking through the treatment that is introduced in Petitioner's Respondent's Exhibit 2, in 2009, Dr. Paletta said there was no ACL tear. In 2011, he performed an arthroscopy of the left knee and again, there's no indication of ACL treatment or pathology. In 2013, Dr. Mall says he believed there was a partial tear of the ACL and he recommended surgery at that time. However, there was an IME from Dr. Rothrock and he says that he believed there was otherwise no difference in the ACL between 2009, when Dr. Paletta said there was no ACL tear, and 2013. The court found, in that case, the opinion of Dr. Rothrock to be more persuasive than Dr. Mall. It was his opinion that the ACL was not the source of Mr. Franklin's problems because he didn't have instability and his pain was more patellofemoral in nature. He even described the MRI findings of the ACL to be, quote, in the bounds of normal. So, there's already been a judicial finding that Mr. Franklin's 2013 and 14 injuries had nothing to do with his ACL. So, here, the first time we have any indication that there's a 2018, and that was by MRI and intraoperative findings of Dr. Paletta. So, here we have definitive evidence that there's a complete ACL tear to explain his instability and to explain the pathology that was observed interoperatively on the MRI. There's no evidence to suggest that it was completely torn or unstable prior to 2018. Concerning the low back and in support of the commission's findings on causality, they adopted the arbitrator's findings that Dr. Gornett, likewise, such as Dr. Paletta, had a long history of treating Mr. Franklin, and he noted that there were specific changes in pathology before and after the 2018 accident. So, again, if we look at the prior medical records, there's a CT discogram from 2015, which revealed no provocative discs at C3-4 and C4-5 and an annular tear at C3-4. After the accident, an MRI in 2019 revealed herniations and facet changes at L4-5 and L3-4 and fluid sign in the facet joint at L4-5, which could account for the symptoms that Mr. Franklin was exhibiting and that could explain the new complaints. Now, Dr. Gornett testified that the testing before and after 2018 showed differences in the petitioner's lumbar spine consisting of a more disc protrusion and annular tear at C3-4 and more fluid in the joint. The CT showed air in the joints above the prior fusion at L5-S1, all consistent with irritation of facet joints, so all consistent with a traumatic event. At that time, for the first time, surgery was recommended to address the pathology at L3-4 and L4-5. The Section 12 examiner, Dr. Robson, conceded that a treating physician, in this instance, Dr. Gornett, with a decade of experience treating Mr. Franklin, would be in a better position to observe the patient, assess his condition, and decide what conditions were related to the accident. The evidence here shows that Mr. Franklin's pre-existing conditions were in the least aggravated to such an extent that it could be said that his current condition is not simply the result of a normal degenerative process. For these reasons, the Commission's findings on the issues of causality and the subsequent findings awarding TTD, medical bills, and prospective treatment for the left knee were not against the manifest weight of the evidence. Your Honors, do you have any questions for me? Seeing none, I thank you for your time and I again cede the podium back to Mr. Keefe. Okay, thank you, Mr. Chappell. Mr. Keefe, you may reply. Thank you, Your Honor. The only thing I wanted to address one more time is the Commission decision failing to address the cervical spine and the left hip. I think they needed to be specifically addressed in this case because there are medical bills at issue and there doesn't seem to be any other reason other than the Commission forgot to address the causation of medical bills on those two conditions because it specifically says in issue F is a condition of ill-being and specifically and it only lists the left knee, lower back, and right hip. The absence of those other conditions and the failure to even really weigh that testimony throughout the statement of facts tells me that they mistakenly forgot to address it. And so that's all I have if there's no more questions. Any questions from the Court? What about the point that he, I mean there are but if he doesn't want to have it addressed, why are those bills an issue? The cervical spine. Correct, Your Honor. Like I say, I think that those bills were an issue and they needed to be addressed. I mean there are occasional times where the parties do stipulate on the record that they do not want the arbitrator and the Commission to address a particular condition of ill-being and we did not have that agreement this time because we assumed those bills were in dispute and the conditions were in dispute. Now it is true that there was no surgery recommended at this time for the neck or the left hip. I absolutely concede that. But the conditions were still diagnosed, disputed, and the associated testing and treatment for the conditions were disputed. If surgery becomes an issue down the line, well then that'll be another subject to another 19B petition, I would assume. But we still have to get over that threshold issue of causation that was at issue here because we did take the depositions and put the evidence in the record. Well thank you, counsel, both for your arguments on this matter this afternoon. It will be taken under advisement and a written disposition shall issue.